## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DORQUI REYNOSO,** | \* <br> \* <br> \* |
| Plaintiff, | \* <br> \* |
| v. | \*  Case No.: RWT 12-cv-2108 <br> \* |
| **INDYMAC MORTGAGE SERVICES,** <br> **FSB,** *a division of Onewest Bank, FSB*, | \* <br> \* <br> \* |
| Defendant. | \* <br> \* |

## MEMORANDUM OPINION

On June 11, 2012, Plaintiff Dorqui Reynoso filed a twelve-count *pro se* Complaint in the Circuit Court for Prince George's County, Maryland, against Defendant, IndyMac Mortgage Services, FSB, a division of OneWest Bank, FSB ("OneWest"). (Doc. No. 2). Ms. Reynoso asserts in her Complaint that OneWest violated various agreements, as well as federal and state law, in relation to its action and failure to take action with respect to a mortgage on her property located in Riverdale, Maryland. *Id.* ¶¶ 1-34. OneWest, a federal savings bank and citizen of California, removed the action to this Court on July 20, 2012. (Doc. Nos. 1, 8).

## FACTUAL BACKGROUND

Ms. Reynoso alleges in her Complaint that on or about May 1, 2007, she purchased property located at 5414 Riverdale Road, Riverdale, Maryland 20737. (Compl., Doc. No. 2, ¶ 17). Ms. Reynoso executed a mortgage with a "Fixed Rate Interest Only Promissory Note," which was serviced by OneWest at an interest rate of six (6) percent and in the principal amount of $248,937.00.[1]  *Id.* ¶ 18. Ms. Reynoso asserts that "her income was reduced" due to a change

---

[1]     In its Motion to Dismiss, OneWest asserts that Ms. Reynoso actually purchased the subject property on September 15, 2003, and that the principal amount for her refinance loan

in her employment status in January of 2011.  *Id.* ¶ 19.  To "remedy her economic situation," she pursued a loan modification from OneWest pursuant to the Home Affordable Modification Program ("HAMP").  *Id.* ¶ 20.

Around April of 2012, Ms. Reynoso allegedly submitted a loan modification request and related documents to OneWest due to her declining economic circumstances.  *Id.* ¶¶ 21, 30-31.  Ms. Reynoso claims that she informed OneWest that a HAMP loan modification was her "'first choice' in her foreclosure avoidance alternatives."  *Id.* ¶ 30.  She also allegedly provided all documents requested by OneWest to evidence her financial hardship, along with "all requisite authorization forms, acknowledgements, and agreements in relation to her Request for Modification and Affidavit ('RMA')."  *Id.* ¶¶ 30-31.

OneWest, however, allegedly failed to provide Ms. Reynoso with "important documents" relating to her mortgage and note (including copies of the mortgage and note at issue), which would "explain her consumer rights with a 'Spanish translation,' as well as other rights," including the "right to cancel the contract and the Federal Truth in Lending Disclosures."  *Id.* ¶¶ 22-23.  Ms. Reynoso claims that, from January 2010 to May 31, 2012, OneWest "systematically acted with carelessness, recklessness, negligence, bad faith, breach of care, breach of duty, breach of good faith and fair dealing, gross negligence with deliberate indifference in its inaction of malfeasance, misfeasance and nonfeasance in its efforts or attempt to modify" Ms. Reynoso's mortgage in accordance with her financial hardship, RMA, and/or "with the provisions of the $800 million Servicer Participation Agreement" that OneWest allegedly "signed with the Federal Government on April 17, 2009."  *Id.* ¶ 32.

---

with OneWest is in fact $249,000.00.  (Doc. No 9-1, at p. 2).  OneWest also claims in its Motion that the Complaint mistakenly describes the note evidencing her mortgage loan as a "Fixed Rate Interest Only Promissory Note," when it is in fact an "Adjustable Rate Note."  *Id.* at p. 3 n.3.

**PROCEDURAL HISTORY**

On July 27, 2012, OneWest filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Doc. No. 9). Also on July 27, 2012, Ms. Reynoso filed a Motion for Remand to State Court and Award of Costs. (Doc. No. 10). Ms. Reynoso filed an Opposition to OneWest's Motion to Dismiss on August 6, 2012. (Doc. No. 12). On August 10, 2012, OneWest filed an Opposition to Ms. Reynoso's Motion for Remand. (Doc. No. 13). OneWest filed a Reply to Ms. Reynoso's Opposition to its Motion to Dismiss on August 22, 2012. (Doc. No. 14). On August 28, 2012, OneWest filed a Supplemental Certificate of Filing State Court Documents (Doc. No. 15), which includes an Affidavit of Service from the Circuit Court of Prince George's County, which purportedly had not previously been filed with this Court along with the other State court documents. *Id.*, Exhibit A.

**STANDARD OF REVIEW**

I.      **Motion for Remand**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* § 1447(c). The Court is "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (citing *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d

148, 151 (4th Cir. 1994)).

## II.      Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency" of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  In recent years, the U.S. Supreme Court clarified the standard applicable to Rule 12(b)(6) motions.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3.  A *pro se* plaintiff is held to a "'less stringent'" standard than a lawyer, and the Court must liberally construe a *pro se* plaintiff's complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

## I.      Motion for Remand to State Court

Relying on the "well-pleaded complaint rule," Ms. Reynoso moves the Court to remand this action back to State court because, in her Complaint, "no claim under federal law is alleged," "no federal issue is raised, and no federal issue needs to be decided."  (Doc. No. 10-1, at pp. 2-3). Consequently, Ms. Reynoso argues that this Court lacks subject matter jurisdiction over her action.  *Id.* at p. 3.  Ms. Reynoso, however, fails to rebut OneWest's alternative basis for removal under diversity jurisdiction.  Her arguments also fail to defeat OneWest's removal based on federal question jurisdiction.

On a "challenge of jurisdictional allegations, '[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.'"  *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (quoting *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)).  "[J]ust as a plaintiff's complaint sufficiently establishes

diversity jurisdiction if it alleges that the parties are of diverse citizenship and that '[t]he matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332,' so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner." *Ellenburg*, 519 F.3d at 200 (internal citations omitted).

Here, OneWest established in its Notice of Removal that this Court has diversity jurisdiction and federal question jurisdiction. (Doc. No. 1, ¶¶ 5-9). Diversity jurisdiction exists because (1) Ms. Reynoso is a citizen of Maryland and OneWest is a citizen of California; and (2) the amount in controversy—alleged to be a mortgage loan in the amount of $248,937—exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."). The Court has supplemental jurisdiction over the remaining claims which are part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy.").

Despite Ms. Reynoso's attempt to cast her Complaint as one based solely on State law, the allegations in her Complaint defeat her arguments and demonstrate that the Court also has federal question jurisdiction. "[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The Supreme Court has long recognized . . . that federal-question jurisdiction is not limited to cases where federal law creates the cause of action." *Columbia Gas Transmission Corp. v. Drain*, 191 F.3d 552, 557 (4th Cir. 1999). Even "[w]here state law creates the cause of action, federal-

question jurisdiction will nonetheless lie if the 'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

Here, as OneWest points out in its Opposition to Ms. Reynoso's Motion for Remand, the Complaint raises substantial questions of federal law. (Def.'s Opp'n, Doc. No. 13, ¶ 17) ("Plaintiff has pleaded substantial federal questions in seven of the twelve numbered counts, because the resolution of each of those counts requires a finding that OneWest has violated a federal law or regulation to sustain the claim asserted."). Ms. Reynoso explicitly asserts in her Complaint that OneWest violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and related federal regulations. *See* Compl., Doc. No. 2, Counts II, III, IV, V, VIII, IX, X. Therefore, federal question jurisdiction is also proper as a basis for removal to this Court, and the Court will deny Ms. Reynoso's Motion for Remand to State Court and Award of Costs. (Doc. No. 10).

## II.     Motion to Dismiss the Complaint

### A.     Counts III, IV, V, and VI

Counts III, IV, V, and VI of Ms. Reynoso's Complaint assert causes of action against OneWest for its action and inaction with respect to her application for a HAMP loan modification. Count III claims that OneWest fraudulently led Ms. Reynoso to believe that she qualified for a HAMP loan modification when in fact she did not. (Compl., Doc. No. 2, ¶ 44). Count IV alleges that OneWest made false representations regarding Ms. Reynoso's mortgage in order to reject her HAMP loan modification request. *Id.* ¶ 54. Count V asserts that OneWest schemed to not provide her with a HAMP loan modification in order to "reap obnoxious profits and benefits at the calculated expense and detriment of [Ms. Reynoso's] misfortune." *Id.* ¶¶ 60-

61.   Count VI claims that OneWest participated in a conspiracy which included "the threat of a foreclosure action when in fact, no right lawfully exist[ed] due to [Ms. Reynoso] never rescinding her FHA-HAMP loan modification application due to her lack of legal standing." *Id.* ¶ 66.   For reasons discussed below, these HAMP-entwined Counts must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The United States Treasury Department's Home Affordable Modification Program ("HAMP") "is a national program designed to stem the home foreclosure crisis by providing affordable mortgage loan modifications and other alternatives to eligible borrowers." *Ramos v. Bank of America, N.A.*, No. DKC–11–3022, 2012 WL 1999867, at *1 (D. Md. June 4, 2012). "Under HAMP, prospective borrowers enter into a standardized contract, called a Trial Period Plan ('TPP'), with lenders/servicers . . . for a three-month trial modification of the borrower's existing note and mortgage." *Id.*

"Congress did not create a private right of action to enforce the HAMP guidelines." *Allen v. CitiMortgage, Inc.*, No. CCB–10–2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011). Courts in the District of Maryland, however, have held "that separate and apart from HAMP, enforcement of the TPP, if one exists, may give rise to a private right of action." *Ramos*, 2012 WL 1999867, at *3 (citing *Stovall v. Sun Trust Mortg., Inc.*, No. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept. 20, 2011); *Allen*, 2011 WL 3425665, at *4). Claims which merely attempt "to enforce the HAMP guidelines," however, without referencing allegations that an applicable TPP exists, must be dismissed. *Ramos*, 2012 WL 1999867, at *3 (dismissing claims under counts which "attempt to enforce HAMP by demanding a TPP").

Here, Counts III, IV, V, and VI of Ms. Reynoso's Complaint are each founded on

OneWest's alleged failure to comply with HAMP.  Ms. Reynoso, however, has not pled facts supporting that she ever entered into a TPP with OneWest, and these claims do not refer to a consummated TPP.  Indeed, Ms. Reynoso alleges that her application for a "loan modification was never consummated by signing therein," and she even concedes that she lacks "legal standing" for at least certain claims related to HAMP.  (Compl., Doc. No. 2, ¶¶ 21, 66).  Consequently, Counts III, IV, V, and VI of Ms. Reynoso's Complaint will be dismissed.[2]

### B.      Counts I and VI

In Counts I and VI of her Complaint, Ms. Reynoso asserts factually bare and vague claims regarding a "civil conspiracy to defraud" by OneWest.  *Id.* ¶¶ 35-37, 65-68.  Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Here, Ms. Reynoso failed to plead particularized facts, such as the time, place, and contents of any false representations or the identities of the conspirators, in support of her claims that OneWest engaged in an unlawful conspiracy.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).  Ms. Reynoso's allegations concerning fraud fail to meet the particularity requirements of Rule 9(b), and therefore Counts I and VI must be dismissed for failure to state a claim upon which relief

---

[2]      In addition, the relevant property in Riverdale, Maryland, does not appear to be Ms. Reynoso's principal residence, which would disqualify Ms. Reynoso from a HAMP loan modification.  *See Edwards v. Aurora Loan Services, LLC*, 791 F. Supp. 2d 144, 149 n.2 (D.D.C. 2011) (noting that HAMP guidelines require that the applicable "loan must be secured by a one-to-four unit property, one unit of which is the borrower's principal residence.").

can be granted.

**C.     Counts II and III**

In Counts II and III of Ms. Reynoso's Complaint, she makes broad, conclusory allegations that OneWest violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, by failing to provide her with certain disclosures and notices. (Doc. No. 2, ¶¶ 38-41, 42-49.  The Court will dismiss Counts II and III of Ms. Reynoso's Complaint for two independent reasons.  First, to the extent that she has alleged a RESPA claim in her Complaint, the claim appears to relate to her refinance loan with OneWest, which closed on January 29, 2007, according to OneWest.  (Doc. No. 9-1, at p. 11).  Ms. Reynoso appears to claim in her Complaint that she executed the loan when she purchased the associated property in May of 2007.  (Doc. No. 2, ¶¶ 17-18).  Section 2605 of RESPA includes disclosures and notices that loan servicers must provide to borrowers under certain circumstances.  *See* 12 U.S.C. § 2605.  An action, however, must be brought "within 3 years in the case of a violation of section 2605 of this title."  *Id.* § 2614.  Ms. Reynoso filed her Complaint on June 11, 2012, and her RESPA claims are accordingly time-barred.  Second, Ms. Reynoso's factual allegations fail to support a cognizable claim under any section of RESPA, as she has not identified how OneWest failed to comply with Section 2605, received unlawful compensation under Section 2607, or otherwise acted in contravention of RESPA's provisions.  Thus, the Court will dismiss Counts II and III of Ms. Reynoso's Complaint.

**D.     Counts III, IV, V, VIII, IX, and X**

In Counts III, IV, V, VIII, IX, and X, Ms. Reynoso appears to claim that OneWest violated provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and related regulations with respect to her initial refinance loan in 2007 and her request for a HAMP loan

modification.  These claims are void of adequate factual support, and are also time-barred by

TILA, because Ms. Reynoso failed to bring her claim within one year of any alleged violation.

*See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States

district court, or in any other court of competent jurisdiction, within one year from the date of the

occurrence of the violation.").  These claims also fail because even if the parties actually entered

into a loan modification, TILA does not appear to apply to loan modifications.  *See* 12 C.F.R. §

226.20; *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 715-16 (E.D. Va. 2003)

(noting that "restructuring/modification agreements are exempt from TILA's disclosure

requirements") (citing 12 C.F.R. § 226.20(a)(4)).  Accordingly, the Court will dismiss Counts III,

IV, V, VIII, IX, and X of Ms. Reynoso's Complaint.

      **E.**      **Count V**

      Count V of the Complaint includes an allegation that OneWest has been "unjustly

enriched at the expense of" Ms. Reynoso.  (Doc. No. 2, ¶ 63).  "In Maryland, the elements of

unjust enrichment are: (i) a benefit conferred upon the defendant by the plaintiff; (ii) the

defendant's knowledge of the benefit; and (iii) the acceptance by the defendant of the benefit

under such circumstances as to make it inequitable to retain the benefit without payment of its

value." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000) (citing *Klein v. Fidelity &*

*Deposit Co.*, 700 A.2d 262 (Md. Ct. Spec. App. 1997)).  "To sustain an unjust enrichment claim,

a plaintiff must have provided an actual benefit to the defendant." *Froelich*, 96 F. Supp. 2d at

524.  Here, Ms. Reynoso has failed to allege facts that she provided a benefit to OneWest, of

which OneWest had knowledge, and which would be inequitable for OneWest to retain.

Consequently, the Court will dismiss Count V's claim of unjust enrichment.

F.      Count VII

Count VII of Ms. Reynoso's Complaint alleges without support that OneWest violated the

Virginia Consumer Protection Act.   (Doc. No. 2, ¶¶ 69-70).   Virginia law, however, has no

applicability to the Maryland property and legal issues in this action.   Accordingly, the Court will

dismiss Count VII.

D.      Count X

In Count X of her Complaint, Ms. Reynoso appears to assert a claim of "breach of good

faith and fair dealing."   (Doc. No. 2, ¶¶ 75-76).   Maryland law, however, "does not recognize a

separate cause of action for breach of the implied covenant of good faith and fair dealing."

*Magnetti v. University of Maryland*, 909 A.2d 1101, 1105 n.3 (Md. Ct. Spec. App. 2006).   The

Court will therefore dismiss Count X of the Complaint.

D.      Count XI

Count XI of Ms. Reynoso's Complaint asserts a cause of action for "mental anguish,

emotional distress, and psychological trauma resulting in PTSD."   (Doc. No. 2, ¶¶ 77-78).   The

Court construes this claim as one for intentional infliction of emotion distress ("IIED").   Under

Maryland law, a "claim of IIED has four elements: '(1) The conduct must be intentional or

reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal

connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress

must be severe.'"   *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris*

*v. Jones*, 380 A.2d 611, 614 (Md. 1977)).   Here, Ms. Reynoso has failed to plead facts in support

of all of the elements of IIED.   Moreover, this Court has previously noted that it "cannot imagine

*any* set of facts surrounding a mortgage transaction that would support an inference of extreme

and outrageous conduct."   *Asafo-Adjei v. First Savings Mortgage Corp.*, No. RWT–09–2184,

2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) (emphasis in original).  The Court will therefore dismiss Count XI of the Complaint.

       **E.**       **Count XII**

In Count XII of her Complaint, Ms. Reynoso seeks injunctive relief.  (Doc. No. 2, ¶¶ 79-81).  Ms. Reynoso captions this Count as one for "quiet title," and requests that the Court enjoin OneWest from certain activities, such as "keeping" certain documents relating to her loan.  *Id.* ¶¶ 80-81.  In order to obtain such relief, Ms. Reynoso "must establish" that: (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips" in her favor; and (4) an "injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  Ms. Reynoso, however, has failed to establish any of these elements, and is therefore not entitled to injunctive relief.  Moreover, Ms. Reynoso has failed to demonstrate that OneWest's interest in her property is invalid such that this Court should "quiet" or remove OneWest's lien.  *See* Md. Code Ann., Real Prop. § 14-108.  Accordingly, the Court will dismiss Count XII of Ms. Reynoso's Complaint.

## CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Remand to State Court and Award of Costs (Doc. No. 10), grant Defendant's Motion to Dismiss (Doc. No. 9), and dismiss Plaintiff's Complaint (Doc. No. 2).  A separate order will follow.

Date:  January 29, 2013           _____/s/_____
                                       ROGER W. TITUS
                                 UNITED STATES DISTRICT JUDGE